[Crim. No. 4111.   Second Dist., Div. Three.   Aug. 14, 1947.]

THE PEOPLE, Respondent, v. JAMES BERRY, Appellant.

H. L. Richardson for Appellant.

Fred N. Howser, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was accused of the crimes of kidnaping and forcible rape, committed while he was armed with a revolver. Trial by jury was waived. He was convicted on both counts, and the court found that the allegation in each count that he was armed with a revolver was true. The sentences were ordered to run concurrently. Defendant appeals from the judgments upon the ground of insufficiency of the evidence. His argument is that the evidence on behalf of the People is inherently improbable. Upon stipulation, a part of the People's case was submitted on the transcript of the preliminary examination.

Esther Gutierrez, the prosecutrix, testified that on August 11, 1946, about 11:50 p. m., she and her husband, on their way home after having attended a theater, alighted from a streetcar at a place near their home, and while they were walking on the sidewalk an automobile, in which there were two men, went a little in front of them and stopped near the curb; that defendant, who was driving the automobile, got out of it, went around in front of the automobile and pointed a gun toward her and her husband and told them to stop; that they stopped and then defendant, pointing the gun at them, told her husband to start walking, and she asked defendant to let them go, and he told her to shut up and get in the car; that meanwhile the other man in the car, Leroy Casmas, moved to the driver's seat; that her husband started walking, and she got in the car and asked Casmas to tell defendant to let them go and he told her to keep quiet; that defendant, after standing by the car door about a minute watching her husband and telling him to keep walking, got in the car, and Casmas drove away; that the car was a small 1931 coupe, and she sat between the men; that while they were riding in the car defendant held the gun on her, and kept telling her to tell her husband to keep away from Connie Moro, a girl with whom defendant said he (defendant) used to live; that she (prosecutrix) asked defendant to let her go because she had a small baby; that they drove to a ranch near Wilmington and Rosecrans Avenues and stopped the car; that defendant, continuing to hold the gun on her, told

her to be quiet if she wanted to get back to her baby, and told her to kiss him, and she kissed him; that defendant then got in front of her, kneeled down and unbuttoned his pants; that she told him she was menstruating; that he told her to keep quiet or he would kill her, and then he had sexual intercourse with her; that Casmas then had sexual intercourse with her; that defendant, stating that he would take her home, backed the car out of the ranch and drove to Central Avenue, and while driving, he said he knew the police and her husband would be waiting for him and that if she should tell the police anything he would kill her and her husband; that he drove on to Compton Avenue and then she saw bright lights (from another car) back of the car, and Casmas told him to get on some other road and he turned on 116th Place and the bright lights followed close to defendant's car; that persons in the car which was following them "hollered to stop," and defendant stopped, and two police officers came to the side of defendant's car, and she ran to the officers' car; that when the officers came up defendant threw the gun "to the back of the car" at a "sort of shelf over the back seat"; that she told her "story to the police then"; that she had never seen defendant prior to the time he stopped her and her husband that night; that she had been a friend of Connie Moro since they were in school together; that she was not bruised or scratched, nor was her clothing torn, in the altercation with defendant; and that she was scared.

The husband of the prosecutrix testified that on August 11, 1946, about 11:50 p. m., he and his wife alighted from a streetcar near their home and walked on the sidewalk toward home when an automobile passed them and stopped, and the driver got out, went around the front of the car, about 14 feet from him and said "Stop"; that that man was the defendant, and he had a gun, apparently a revolver, in his hand; that he pointed the gun at him (the husband) and told him to start walking and told the wife to get in the car; that he started walking; that when the car stopped, another person who was in the car shifted to the driver's seat; that he (the husband) had been with his wife all of the afternoon and evening of that day.

Leroy Casmas, called as witness by plaintiff, testified that he was 16 years of age; that he had known defendant a short while before August 11, 1946, and on that day about 10 p. m., while the witness was in front of a cafe defendant came along

and asked him to go with him to his girl friend's house; that he got in defendant's car with him and after they had driven about five blocks he saw Mr. and Mrs. Gutierrez walking on the street; that defendant drove to the curb, stopped, got out and pulled a gun out of his pocket and told Mrs. Gutierrez to get in the car and told Mr. Gutierrez to walk up the street; that she got in the car, and he (witness) drove the car away; that he drove to Rosecrans Avenue, and out into an open field; that after she was in the car she said she wanted to go home to her baby; that after they were in the field defendant got down on his knees on the floor of the car and had intercourse with her, and then the witness had intercourse with her; that during those acts the defendant had the gun in his hand; that before the act was committed she asked him not to do it because she was sick; that after they left the field they drove about a mile before the officers came up and flashed a light "in back for us to stop"; that when they came and opened the door she ran to the police car and hollered, "They raped me." He testified further that he is in the custody of the Youth Authority; that the officers, in talking to him about being a witness against defendant, told him that if he would tell the same thing the complaining witness told, his sentence would be much lighter; that the reason he was telling the story against defendant was that he believed the officers when they said if he did that he would be assisting himself in the matter of the sentence.

A police officer testified that he first saw defendant on August 12, 1946, about 12:45 a. m., near 116th and Compton; that they followed defendant's car a short time and then stopped it; that he found a revolver, with five cartridges in it, on the floor of the car in front of the driver's seat, and found some cartridges in defendant's pocket; that defendant said he had seen Mrs. Gutierrez in a cafe and she asked him to take her home.

It was stipulated as follows: That a physician would testify that on August 12th he took certain substance from the vagina of prosecutrix and put it on slides and gave them to a chemist; that the chemist would testify that he examined the slides and found that the substance was impregnated with spermatozoa and menstrual blood; that the officer who arrested defendant took defendant's pants at the time of the arrest and turned them over to the chemist; that the chemist examined the pants and found on the front of them a place impregnated with menstrual blood.

Defendant testified that he had known the prosecutrix about a year, and that he sees her quite often when she catches a streetcar; that he met her in the back yard at Connie's; that he had been to parties with her and Connie; that on August 11, 1946, between 10:30 and 11:30 p. m., he went alone into a beer joint at 110th and Wilmington and there he saw the prosecutrix who was alone; that he asked for sandwiches, and then went over to the prosecutrix and she said she was afraid to go home and asked him to take her there; that he was in the place about 10 minutes and then they left the place together and got in his car; that he told her he was looking for sandwiches and he was going to drive to some cafes about four blocks away; that on the way he saw Casmas, who got in the car with them; that he stopped at another place but could not get any sandwiches, and then when he was about to stop for sandwiches at another place, on the way to take her home, the officers stopped him; that when the officer came to the car she said, "They raped me"; that the officers took a gun from the floor under the seat on the driver's side of the car; that he did not hold the gun on the prosecutrix at any time; that he did not have sexual intercourse with her, and he did not see Casmas have sexual intercourse with her; and that he never saw Mr. Gutierrez at any time before the preliminary hearing.

Mr. Diggs, called by defendant, testified that on August 11, 1946, about 10:35 or 11 p. m., he saw defendant in a cafe at 110th and Wilmington talking to the prosecutrix, and saw them leave the cafe together, and he also saw him coming down the street with her. Mrs. Robinson, called by defendant, testified that on the day in question about 11 p. m. she was sitting in an automobile with Mr. Diggs and she saw defendant come out of the cafe with a girl, who appeared to be the person who was later pointed out in court as Mrs. Gutierrez.

As above stated, appellant asserts that the evidence is inherently improbable. His counsel argues in support of that contention as follows: That it is significant that the prosecutrix stated that defendant threw the revolver into the back part of the car and that the officer stated he found it in the front part of the car, and that since the question of force, coercion and intimidation depends upon whether the gun was used, this difference in the testimony should be taken into consideration in determining whether the prosecutrix told the truth as to what occurred that evening; that defen-

dant's testimony is corroborated by two witnesses of good reputation who had no motive to testify falsely and consequently they were entitled to full credence; that it is not logical that a man would commit such crimes upon someone he knew and then take her home so that he could be arrested; that if one were going to commit such crimes he would do so in a manner that he would not be apprehended, and that her testimony as to the circumstances, "particularly with reference to where the gun was found," is so inherently improbable the judgment should be reversed.

That argument relates to the matter of determining the weight that should be given to the evidence, which matter was for the determination of the trial court. It is not the function of the reviewing court to determine the weight of the evidence, but only to determine the legal sufficiency of the evidence. The evidence is not inherently improbable. The difference in the testimony of the prosecutrix and the officer as to the place where the gun was in the car does not indicate that the testimony of the prosecutrix was inherently improbable. Various factors enter into a consideration of the testimony in that respect, including whether or not the gun might have been moved by the defendant, or might have fallen from the "shelf" after the prosecutrix allegedly saw it thrown "to the back of the car" or to the "shelf over the back seat" of the coupe. As to Casmas testifying as he did because he hoped to obtain leniency in his own case, his testimony was not thereby necessarily rendered inadmissible or unworthy of consideration. Even though he may have expected to aid himself by so testifying, it cannot properly be concluded that his testimony was untrue merely because he had such expectation. The weight, if any, to be given his testimony was for the trial court. The evidence was legally sufficient to support the judgment without the testimony of Casmas.

The judgment is affirmed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.